UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                       Plaintiff,

v.

STEPHEN J. TREADWAY
AND KENNETH W. CORBA,

                       Defendants.

Civil Action No.
04 Civ. 3464 (VM)

---

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO (1) DEFENDANT STEPHEN J. TREADWAY MOTION IN LIMINE NUMBER TWO TO PRECLUDE THE SEC FROM OFFERING LAY OPINION TESTIMONY OF WALLACE STOOKS AND (2) DEFENDANT KENNETH W. CORBA'S MOTION IN LIMINE NO. 3 TO PRECLUDE TESTIMONY BY LAY WITNESSES REGARDING POTENTIAL HARM FROM MARKET TIMING**

## **TABLE OF CONTENTS**

|   |   | Page |
|---|---|---|
| I. | INTRODUCTION AND SUMMARY OF ARGUMENT | 2 |
| II. | ARGUMENT | 3 |
|   | A. Rule 701 Does Not Preclude Lay Opinion Testimony Of A Witness Who Has Technical Or Specialized Knowledge, So Long As The Witness' Testimony Is Based On Personal Knowledge | 3 |
|   | 1. Because Stooks Has Personal Knowledge About A Trustee's Duties To The Board And The Funds, PIMCO's Market Timing Policies, and Treadway's Understanding Of The Harmful Effects Of Market Timing, His Lay Opinions And Inferences Are Admissible | 4 |
|   | 2. Because Parker and Schneider, As Portfolio Managers, Have Sufficient Personal Knowledge To Testify About The Potential or Actual Disruption And Harm Of Canary's Market Timing Activities On Their Funds, Their Lay Opinions And Inferences Are Admissible | 6 |
|   | B. The Proffered Testimony Of Stooks, Parker, and Schneider Will Be Helpful To The Jury In Deciding The Issues In This Case | 9 |
|   | C. There Is No Basis To Exclude The Proffered Testimony Under Rule 403 | 11 |
| III. | CONCLUSION | 12 |

## TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

Bank of China v. NBM LLC
    359 F.3d 171 .................................................. 4, 11

Hester v. BIC Corp.
    225 F.3d 178 ..................................................... 11

Lightfoot v. Union Carbide Corp.
    110 F.3d 898 ...................................................... 8

United States v. Fowler
    932 F.2d 306 ...................................................... 8

United States v. Garcia
    291 F.3d 127 ................................................ 6, 10-11

United States v. Rea
    958 F.2d 1206 ................................................. 4, 9, 11

United States v. Smith
    550 F.2d 277 ...................................................... 9

United States v. Quattrone
    441 F.3d 153 ..................................................... 12

**FEDERAL STATUTES**

Federal Rule of Evidence 403 ........................................ 11-12

Federal Rule of Evidence 602 ........................................... 4

Federal Rule of Evidence 701 ............................... 2-4, 6, 8, 10-11

Federal Rule of Evidence 702 ........................................... 3

Plaintiff Securities and Exchange Commission ("Commission") hereby submits this opposition in response to Defendant Kenneth W. Corba's Motion In Limine No. 3 To Preclude Testimony By Lay Witnesses Regarding Potential Harm From Market Timing ("Corba's Motion No. 3") and to Defendant Stephen J. Treadway's Motion In Limine Number Two To Preclude The SEC From Offering Lay Opinion Testimony Of Wallace Stooks ("Treadway's Motion No. 2"). Treadway has joined in Corba's Motion No. 3. Corba has not joined in Treadway's Motion No. 2.

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

It is beyond dispute, as Treadway concedes in his papers, that witnesses in this case can testify about relevant factual matters they observed and/or had knowledge about at the time of Canary's market timing activities at PIMCO. *See* Fed. R. Evid. 602; Treadway Motion at 3 ("To the extent the SEC intends to confine its questioning of Stooks to these factual matters, such as what Treadway and others actually said or did at board meetings, Treadway does not object"); *id.* at 8 ("SEC can illicit from Stooks objective facts . . . concerning the Board's role and function with respect to prevention of market-timing, the discussions the Board had concerning market timing, and what disclosures were or were not made to it"). Such evidence is clearly relevant and highly probative of the issues the jury must decide in this case, including: (1) whether the market timing disclosure in the prospectus and other investor materials was false or misleading, in light of the undisclosed market timing arrangement with Canary; (2) whether defendants acted with scienter or negligently in approving the market timing arrangement and letting it continue for more than a year; and (3) whether defendants breached their fiduciary duties by failing to

1

disclose, investigate, and/or stop Canary's market timing activities despite potential disruption and harm caused by Canary's frequent round-trip trading.

Corba, joined by Treadway, nevertheless asserts that the PIMCO Funds' portfolio managers, Jeffrey Parker ("Parker") and John Schneider ("Schneider"), cannot testify at trial, as they did in deposition, about any actual or potential disruption or harm associated with market timing generally or created by Canary's frequent trading. Treadway further claims that the PIMCO Funds' trustee, Wallace Stooks ("Stooks"), cannot testify at trial, as he did in deposition, that Treadway had a duty to disclose, and should have disclosed, the Canary market timing arrangement to the PIMCO Board. Put simply, defendants' positions have no merit. There is no question that Parker and Schneider, as portfolio managers, have sufficient personal knowledge and involvement in PIMCO's business operations to testify about any disruption or harm that Canary's market timing activities could have caused and/or did in fact cause to the funds that they managed. Similarly, as a trustee of the Board which was ultimately responsible for and involved in overseeing the PIMCO funds and developing policies regarding market timing, Stooks can testify competently that the market timing arrangement was important information that should have been disclosed to the Board by Treadway, in part because such trading practices may have violated PIMCO's policies related to market timing. Moreover, to the extent the proffered testimony involves lay opinions or inferences, it is still admissible under Rule 701, as discussed in more detail below, because such testimony is rationally based on the witnesses' perceptions and will be helpful to the jury in deciding the issues in this case.[1]

---

[1] Relevant excerpts from the depositions of Stooks, Schneider, and Parker are attached as Exhibits 1, 2, and 3, respectively, to the Declaration of Jose F. Sanchez ("Sanchez Decl."), filed currently herewith, in support of this opposition. Unless otherwise noted, all

2

II.  ARGUMENT

Rule 701, which concerns the admissibility of lay opinions or inferences, provides as follows:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. The proffered testimony of Stooks, Parker, and Schneider satisfy the requirements of Rule 701.

### A. Rule 701 Does Not Preclude Lay Opinion Testimony Of A Witness Who Has Technical Or Specialized Knowledge, So Long As The Witness' Testimony Is Based On Personal Knowledge

Contrary to defendants' assertions, lay witnesses are not precluded from testifying about their opinions or inferences simply because they, like the portfolio managers and trustee in this case, have technical or specialized knowledge about the mutual fund industry. As the Advisory Committee to the Federal Rules of Evidence explain: "Such opinion testimony is admitted *not* because of experience, training or specialized knowledge within the realm of an expert, *but* because of the particularized knowledge that the witness has by virtue of his . . . position in the business." Fed. R. Evid. 701 Advisory Committee's Note. Therefore, not surprisingly, the

---

exhibits referenced herein are attached to the Sanchez Decl.

3

Second Circuit has made clear that a lay witness, who has technical or specialized knowledge, can still testify as to his opinions or inferences under Rule 701, so long as such testimony is based on his own personal knowledge. *See Bank of China v. NBM LLC*, 359 F.3d 171, 181, 182 (2d Cir. 2004) ("the fact that [the bank employee] has specialized knowledge, or that he carried out the investigation because of that knowledge does not preclude him from testifying pursuant to Rule 701, so long as the testimony was based on the investigation and reflected his investigatory findings and conclusions, and was not rooted *exclusively* in his expertise" (emphasis added)). Because Stooks, Parker, and Schneider have personal knowledge about the matters they will testify about, their testimony is admissible under Rule 701.[2]

### 1. Because Stooks Has Personal Knowledge About A Trustee's Duties To The Board And The Funds, PIMCO's Market Timing Policies, and Treadway's Understanding Of The Harmful Effects Of Market Timing, His Lay Opinions And Inferences Are Admissible

Treadway's attempt to minimize Stooks' responsibilities, involvement, and knowledge concerning the PIMCO Funds and market timing should be flatly rejected. Stooks was an independent trustee of the PIMCO Funds' Board, chairman of the audit committee, and chairman of the independent trustees during the relevant period in this case. (Stooks Dep. at 9-14 (Ex.1 to Sanchez Decl.).) Treadway was the chairman of the Board and worked with Stooks in determining the agenda for meetings, assisting in committee meetings, and chairing meetings of the independent trustees. In addition, as this Court found on summary judgment, the PIMCO

---

[2] Rule 701's "rational-based requirement 'is the familiar requirement of first-hand knowledge or observation'" of Rule 602. *United States v. Rea*, 958 F.2d 1206, 1215 (2d Cir. 1992) (quoting advisory committee notes on the 1972 proposed rules).

4

Funds, through the Board, contracted with the PIMCO entities that Treadway was in charge of to provide investment advisory, supervisory, and administrative services to the PIMCO Funds. (Decision at 5-11.)

Stooks will testify that he was responsible, along with the other trustees, including Treadway, for overseeing the Funds and that the trustees assumed the duty to, among other things, act in the best interests of the PIMCO Funds and their shareholders. In carrying out his trustee responsibilities and duties, Stooks reviewed and became familiar with PIMCO Funds' prospectus as well as PIMCO's policy against market timing. (Stooks Dep. at 12-40 (Ex. 1 to Sanchez Decl.).) Stooks will testify that Treadway and others regularly reported to the Board, including Stooks, on various matters relating to market timing throughout 2001 and 2002, including PIMCO's efforts to identify and kick out market timers, and proposals made by Treadway and others to curb market timing and minimize the potential harm market timing causes on long-term investors. (*Id.* at 16-24, 30-36; *See also* Government Ex. 38.) Stooks also will testify that he and Treadway were involved in the Board's discussion and decision to impose redemption fees as a way to discourage market timing and shift the costs of redemptions from long-term investors to market timers and other short-term investors. (*Id.*) This testimony is all corroborated by contemporaneous minutes and other related documents of the Board. (*Id.*)

Stooks further will testify that the first time that Treadway or anyone else at PIMCO told him and the Board about any market timing arrangement approved by Treadway or any of the PIMCO entities was in September 20003, after Canary's market timing activities became public and PIMCO started receiving various requests for information from government agencies

5

conducting investigations into Canary's trading activities. (Stooks Dep. at 42, 52, 62-63 (Ex. 1 to Sanchez Decl.).)

The Commission submits that, based on this evidence, it is entirely proper to allow Stooks to testify at trial that: (1) he would have expected Treadway to disclose to the Board the market timing arrangement he later learned had been approved by Treadway; (2) the Canary market timing arrangement was important information he would have wanted to know as a trustee; and (3) Canary's market timing activities should have been disclosed to the Board by Treadway, in part because such trading practices "may" have violated PIMCO's policies related to market timing. (*Id.* at 55-56, 57-59.) Such testimony is rationally based on Stooks' own perceptions as required by Rule 701. The fact that Stooks did not have contemporaneous knowledge of Canary's trading activities does not matter, because he personally participated in market timing discussions involving Treadway. *See United States v. Garcia*, 291 F.3d 127, 140-141 (2d Cir. 2002) (status of witness as participant in conversation sufficient to demonstrate basis of opinion as to what defendant heard, meant, and/or understood). Accordingly, Stooks' lay opinions and inferences should be admitted at trial.

> 2. **Because Parker and Schneider, As Portfolio Managers, Have Sufficient Personal Knowledge To Testify About The Potential or Actual Disruption And Harm Of Canary's Market Timing Activities On Their Funds, Their Lay Opinions And Inferences Are Admissible**

Defendants' assertions that any testimony from portfolio managers regarding disruption or risk of harm posed by Canary's trading would be speculative and not based on their personal knowledge is plain wrong. Both Schneider and Parker were involved in discussions with Corba

6

and other portfolio managers concerning the Canary market timing arrangement. They heard Corba describe the Canary arrangement as including both market timing and long-term investments. (Parker Dep. at 66-84, 91-92, 129, 150-151, 154, 169-170, 206 (Ex. 3 to Sanchez Decl.); Schneider Dep. at 35-40, 49, 80-81 (Ex. 2 to Sanchez Decl.).) Schneider further will testify that he and other portfolio managers expressed to Corba dissatisfaction with and concern about the proposed Canary market timing arrangement. (Schneider Dep. at 37-40, 43-44, 68, 72, 80-82 (Ex. 2 to Sanchez Decl.).) Schneider did not want to allow his Fund to be part of Canary's market timing arrangement, in part because he believed that granting one client special trading privileges was not in the best interests of the Fund nor consistent with his fiduciary duties. (Schneider Dep. at 41-42, 67-68, 80-84 (Ex. 2 to Sanchez Decl.).) Schneider also was aware at the time of PIMCO's efforts to identify market timers and kick them out of the PIMCO Funds and told Corba he was concerned about the potential disruption that market timing from Canary could have on the management of his funds. (*Id.* at 22-24, 26-27, 29, 69-70) Schneider's funds were exempted from the Canary market timing arrangement. (*Id.* at 46, 51, 53, 63, 72.)

Parker was not so lucky. The Target Fund, which Parker managed, was market timed by Canary from February through November 2002. (Parker Dep. at 82-85 (Ex. 3 to Sanchez Decl.).) Parker monitored Canary's trading in his fund. (*Id.* at 118, 122-123, 126-127, 138-139, 171, 194.) Parker will testify that immediately following the first Canary round trip transaction in his fund, Parker repeatedly complained to Corba about Canary's market timing arrangement and told him that Canary's trading was different than initially portrayed, that he did not want to be part of any market timing and wanted it to stop, and that Canary's market timing activities were disruptive and potentially harmful to investors. (*Id.* at 50, 80-84, 111, 116-117, 119, 128, 140,

7

148-149, 153, 157, 160-161, 165, 197, 201.) Parker further will testify that he maintained a spreadsheet reflecting each Canary trade and showing the profit or loss from each transaction in the Target Fund, and that any profit by Canary on particular transactions would have been at the expense of the fund's shareholders. (*Id.* at 122, 127, 199-200.) Parker also will testify that as lead portfolio manger for the Target Fund, he understood he was responsible for, among other things, reviewing the prospectus to make sure that the information about his funds was accurate, and that he was managing his funds consistently with PIMCO's disclosures in the prospectus and marketing to investors. (*Id.* at 25, 70-71.)

Thus, there is no question that Parker and Schneider, as portfolio managers, have sufficient personal knowledge to testify not just about discussions they participated in regarding market timing but also that Canary's market timing activities could have caused and/or did in fact cause disruption and harm to the funds that they managed. *See Bank of China v. NBM LLC*, 359 F.3d at 181 ("to the extent [the] . . . testimony was grounded in the investigation he undertook in his role as a bank employee, it was admissible pursuant to Rule 701 . . . because it was based on personal perceptions"); *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 911 (2d Cir. 1997) ("[witness] had established a solid foundation of his intimate knowledge with [defendants'] operation and his opinion was thus based on observations about the[defendants'] decision-making process"). Portfolio managers further can testify as to any opinions or inferences as to whether defendants, given their positions and involvement in PIMCO's mutual fund business and operations, knew or should have known about the risks associated with Canary's market timing arrangement and activities. *See United States v. Fowler*, 932 F.2d 306, 312 (4th Cir. 1991) (Department of Defense officials properly allowed to give opinion that a person with defendant's

8

experience in the department would know rules forbidding giving certain documents to contractors); *United States v. Smith*, 550 F.2d 277, 281 (5th Cir. 1977) (witnesses properly allowed to testify to her belief that defendant who ran a federally funded program understood certain federal regulations).[3] The fact the parties also have submitted expert testimony regarding risk of harm does not render inadmissible the proffered testimony of Parker and Schneider, since their lay opinions and inferences are based on personal knowledge and, as discussed below, will be helpful to the jury in deciding the issues in this case.

B. **The Proffered Testimony Of Stooks, Parker, and Schneider Will Be Helpful To The Jury In Deciding The Issues In This Case**

Defendants assert that the proffered testimony of Stooks, Parker, and Schneider will not help the jury in this case. This assertion is also wrong. As the Second Circuit has explained: "Lay opinion testimony will probably be more helpful when the inference of knowledge is to be drawn not from observed events or communications that can be adequately described to the jury, but from such factors as the defendant's history or job experience." *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992). Thus, it is entirely proper to allow a fellow trustee or portfolio manager to give opinions that defendants, based on their positions, background, and experiences, would know and understand that PIMCO had a policy of restricting and discouraging market timing activities; that such policy had little if any discretion; and that market timing had the potential to disrupt the management of a fund and to harm a fund and its shareholders. This proffered evidence further will help the jury understand why it is reasonable for Treadway and

---

[3] These cases were cited approvingly by the Second Circuit in *United States v. Rea*, 958 F.2d at 1216.

9

Corba not to approve the market timing arrangement or to stop Canary's trading activities once Canary began to engage in frequent round trips, as well as for Treadway to disclose to the Board the existence of the Canary market timing arrangement during other market timing discussions he participated in with the Board. All of this evidence will ultimately help the jury decide whether or not defendants' violated the federal securities laws in this case.

Contrary to defendants' position, however, the proffered evidence does not tell the jury to reach only one conclusion. *See United States v. Rea*, 958 F.2d at 1215 ("Rule 701's helpfulness requirement is designed to provide 'assurance[] against the admission of opinions which would merely tell the jury what result to reach"). None of these witnesses will testify that they believed defendants acted fraudulently or negligently, or that the Canary arrangement actually rendered misleading the market timing disclosure in the prospectus.[4] Moreover, even if the proffered testimony will help the jury decide ultimate issues of fact in this case, such testimony is still admissible under Rule 701. The Second Circuit has made clear that "opinion testimony, whether offered by a lay witness . . . or by an expert . . . is not inadmissible simply 'because it embraces an ultimate issue to be decided by the trier of fact.'" *United States v. Garcia*, 413 F.3d 201, 210 (2d Cir. 2005) (quoting Fed. R. Evid. 704). Indeed, "'[t]here is no theoretical prohibition against allowing lay witnesses to give their opinions as to the mental states of others,'". . . provided that

---

[4] Indeed, the Court considered this same evidence in its summary judgment decision and concluded that a reasonable juror may find that defendants did not violate the federal securities laws. For example, the Court concluded that, based on this same evidence, a reasonable jury may find that defendants were not required to tell shareholders about Canary's market timing activities, because the market timing disclosure gave defendants some discretion, and/or because defendants put in place various safeguards they believed would protect the PIMCO Funds and its shareholders from harm.

10

the proponent of the testimony first establishes a proper foundation." *United States v. Garcia*, 291 F.3d 127, 141 (2d Cir. 2002) (citing *United States v. Rea*, 958 F.2d at 1215)).

The cases cited by defendants do not compel a different conclusion. In defendants' cases, the courts were concerned with witnesses who, unlike here, did not have sufficient personal knowledge to testify about their lay opinions, and/or involved the improper practice in criminal cases, not applicable here, of having a government case agent testify about the conclusions reached in a criminal investigation to paint a picture of guilt against a defendant. *See United States v. Garcia*, 413 F.3d at 211 (summarizing cases).[5] Because the proffered testimony in this case is based on the witnesses' personal knowledge and helpful to the jury, the lay opinions and inferences of Stooks, Parker, and Schneider discussed above should be admitted under Rule 701.

## C.     There Is No Basis To Exclude The Proffered Testimony Under Rule 403

Treadway asserts that, even if admissible under Rule 701, any opinions or inferences by Stooks should be excluded under Rule 403 as prejudicial because, as a trustee, he will be too authoritative and compelling as a witness. This is not the kind of "prejudice" that is prohibited by the Federal Rules of Evidence. Rule 403 states that relevant evidence may be excluded if its

---

[5]     For example, Treadway cites *Bank of China*, 359 F.3d at 182; *United States v. Garcia*, 413 F.3d at 212-213; *Hester v. BIC Corp.*, 225 F.3d 178, 182-184 (2d Cir. 2000) to support his position. The facts in those cases are easily distinguishable. The Second Circuit in *Bank of China* found that explanations regarding typical international business transactions, and any conclusions made that were not the result of witnesses' investigation or personal knowledge were improperly admitted. 359 F.3d at 182. Similarly, *United States v. Garcia*, 413 F.3d at 212-213, involved opinion testimony from a law enforcement officer about defendants' culpability for the charged crime and was not based on his personal perceptions but on the collective knowledge of all of the officers involved in the investigation. 413 F.3d at 212-213. Likewise, the *Hester* Court held that lay opinion testimony from fellow employees that defendant was motivated by racial animus was improperly admitted because witnesses did not have first-hand knowledge of the defendant's decision-making process and therefore simply told the jury what result to reach. 225 F.3d at 185.

probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403. Further, the Second Circuit recently made clear that in order to be prejudicial within the meaning of Rule 403, evidence must "tend[] to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission." *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006). Because as explained above, the testimony of Stooks, Parker, and Schneider is based on personal knowledge and will be helpful to the jury in deciding the issues in this case, the proffered evidence presents no Rule 403 problem. Indeed, Corba's motion does not even bother to make a Rule 403 argument.

### III. CONCLUSION

As set forth above, Corba's Motion No. 3 and Treadway's Motion No. 2 should be denied.

DATED: May 26, 2006                                        Respectfully submitted,

                                                           _____/s/_____
                                                           Jose F. Sanchez
                                                           Adam D. Schneir
                                                           Sam S. Puathasnanon
                                                           Attorneys for Plaintiff
                                                           Securities and Exchange Commission

## PROOF OF SERVICE

I am over the age of 18 years and not a party to this action. My business address is:

[X]  U.S. SECURITIES AND EXCHANGE COMMISSION, 5670 Wilshire Boulevard, 11th Floor, Los Angeles, California 90036.

Telephone: (323) 965-3998; Fax: (323) 965-3908

On May 26, 2006, I caused to be served the document entitled
**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO (1) DEFENDANT STEPHEN J. TREADWAY MOTION IN LIMINE NUMBER TWO TO PRECLUDE THE SEC FROM OFFERING LAY OPINION TESTIMONY OF WALLACE STOOKS AND (2) DEFENDANT KENNETH W. CORBA'S MOTION IN LIMINE NO. 3 TO PRECLUDE TESTIMONY BY LAY WITNESSES REGARDING POTENTIAL HARM FROM MARKET TIMING**
upon the parties to this action addressed as stated on the attached service list:

[ ]  **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

   [ ]  **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

   [ ]  **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

[ ]  **PERSONAL SERVICE:** I caused to be personally delivered each such envelope by hand to the office of the addressee in the attached service list.

[X]  **FEDERAL EXPRESS:** By placing in sealed envelope(s) designated by Federal Express with delivery fees paid or provided for, which I deposited in a facility regularly maintained by Federal Express or delivered to a Federal Express courier, at Los Angeles, California.

[ ]  **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

[X]  **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

[X]  **(Federal)** I declare that I am employed in the office of a member of the bar of this Court, at whose direction the service was made. I declare under penalty of perjury that the foregoing is true and correct

Date: May 26, 2006

_/s/ Sonia Salgado_
SONIA SALGADO

<u>SEC v. STEPHEN J. TREADWAY, et al.</u>
United States District Court - Southern District of New York
Case No. 04 CV 3464 (VM)
(LA-2796)

SERVICE LIST

Alan Levine, Esq. **(served by electronic mail and Federal Express)**
Stephen L. Ascher, Esq.
Kronish Lieb Weiner & Hellman LLP
1114 Avenue of the Americas
New York, NY 10036-7798
Facsimile: (212) 479-6275
Email: alevine@kronishlieb.com
Email: sascher@kronishlieb.com
***Attorneys for Defendant Stephen J. Treadway***


James C. Rehnquist, Esq. **(served by electronic mail and Federal Express)**
Abigail Hemani, Esq.
Goodwin Procter LLP
Exchange Place
53 State Street
Boston, MA 02109
Facsimile: (617) 523.1231
Email: jrehnquist@goodwinprocter.com
Email: akaufman@goodwinprocter.com
***Attorneys for Defendant Kenneth W. Corba***